UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MICHAEL LAWRENCE BROMM,                              :
                                                     :         **MEMORANDUM & ORDER**
                                      Plaintiff,     :
                                                     :         21-CV-2940 (PK)
           -against-                                 :
                                                     :
                                                     :
COMMISSIONER OF SOCIAL SECURITY,                     :
                                                     :
                                      Defendant.     :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Michael Lawrence Bromm ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), finding him not disabled within the meaning of the Social Security Act ("Act") and therefore not entitled to disability insurance benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") under Title XVI of the Act.  Plaintiff (Dkt. 15) and the Commissioner (Dkt. 18) have cross-moved for judgment on the pleadings.  For the reasons stated below, Plaintiff's motion is granted, Defendant's cross-motion is denied, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I.     Procedural Background

On November 14, 2018, Plaintiff completed a Title II application for DIB and a Title XVI application for SSI alleging disability beginning September 24, 2016.  (Administrative Record[1] ("AR")

---

[1] Due to its length, the Administrative Record appears on the Court's docket as four separate filings and can be found at Dkts. 9, 9-1, 10, 10-1, 11, 11-1, 12, 12-1, and 12-2.

1

at 263-74.)[2]  On May 29, 2020, counsel for Plaintiff sent the Social Security Administration ("SSA") an updated Title XVI application due to a change in Plaintiff's income.  (*Id.* at 198-222.)  Plaintiff filed for disability benefits due to post-traumatic stress disorder ("PTSD"), bipolar disorder types one and two, anxiety, obsessive-compulsive disorder ("OCD"), and clinical depression; he alleged an inability to function or work as of September 24, 2016.  (*Id.* at 84-85.)  The New York State Social Security Agency (the "State Agency") found that Plaintiff was not disabled under Title II on February 11, 2019.  (*Id.* at 83.)  After reconsideration, the State Agency reached the same determination on December 12, 2019.  (*Id.* at 94.)

On February 21, 2020, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 136-37.)  A hearing was conducted before ALJ Kevin Kenneally on August 3, 2020, at which Plaintiff appeared and testified.  (*Id.* at 13.)  Vocational Expert ("VE") Mary Vasishth offered opinion testimony.  (*Id.* at 33.)

On August 14, 2020, the ALJ found that Plaintiff was not disabled under the Act, and therefore not entitled to DIB or SSI, because he retained the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy.  (*Id.* at 47-63.)  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review of the ALJ's decision on March 23, 2021, rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1-3.)  This appeal followed on May 25, 2021.  ("Compl.," Dkt. 1.)

Plaintiff filed his notice of motion for judgment on the pleadings and memorandum of law in support on December 16, 2021.  ("Pl. Mem.," Dkt. 16.)  The Commissioner filed the cross-motion for judgment on the pleadings and memorandum of law in support on January 26, 2022.

---

[2] Plaintiff also appears to have completed a Title II application at an earlier date, but this application does not appear in the administrative record.  (*See* AR at 47 (the ALJ noting that Plaintiff initially filed a Title II claim on October 16, 2018); 268 (Plaintiff claiming that before November 14, 2018, he had filed an application with the Social Security Administration).)

("Def. Mem.," Dkt. 18-1.)  Plaintiff filed a reply to the cross-motion for judgment on February 10, 2022.  ("Pl. Reply," Dkt. 20.)  The parties consented to Magistrate Judge jurisdiction on June 6, 2023.  (Dkt. 23.)

## II. The ALJ's Determination

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act.  A claimant is disabled for the purpose of collecting DIB or SSI when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

A five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  This process is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that she has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in her prior type of work, the Commissioner must find her disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted).

At steps one through four of the sequential five-step framework, the claimant bears the burden of proving disability. *Id.* at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Using the five-step sequential process described above, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 24, 2016, the alleged onset date. (AR at 49.)

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: neurogenic bladder, irritable bowel syndrome, general anxiety disorder, major depressive disorder, manic bipolar disorder, posttraumatic stress disorder, and obsessive-compulsive disorder.[3] (*Id.*) The ALJ found that these impairments "impose more than minimal limitations regarding the claimant's overall functioning." (*Id.* at 50.)

At step three, the ALJ determined that Plaintiff's impairments, considered individually or in combination, did not meet or medically equal the severity of the listed impairments in 20 CFR Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926), which would conclusively require a determination of disability. (*Id.*) The ALJ concluded that Plaintiff's neurogenic bladder and irritable bowel syndrome symptoms did not meet or medically equal any listing. The ALJ also concluded that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). (*Id.*)

Because Plaintiff's impairments did not conclusively require a determination of disability, the ALJ proceeded to evaluate Plaintiff's RFC. The ALJ determined that Plaintiff could perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff (1) was limited to performing simple routine tasks, (2) was limited to making simple work-related decisions, (3) could never interact with the general public and must deal with things rather than people,

---

[3] The ALJ found that other symptoms exhibited by Plaintiff, in particular, shoulder pain, were either non-severe or were not medically determinable impairments. (AR at 50.) This finding has not been challenged by Plaintiff.

4

(4) could only occasionally interact with co-workers, with no tandem tasks or team work, (5) could engage in no more than occasional interaction with supervisors, (6) must have access to a bathroom at the work site, and (7) in addition to normal breaks, would be off-task five percent of the time in an eight-hour workday. (*Id.* at 52.) In determining that Plaintiff had the RFC to perform a full range of work limited only by the above conditions, the ALJ stated that he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence, as well as other evidence. (*Id.*) The ALJ stated that he also considered the medical opinions in the record as well as prior administrative medical findings. (*Id.*)

The medical opinions referenced by the ALJ included the opinion statement of Linda Grove, NP ("NP Grove"), Plaintiff's treating mental health provider. (*Id.* at 58.)

On June 14, 2019, NP Grove found that when it came to understanding, remembering, or applying information, Plaintiff had, in addition to moderate or lesser findings, marked limitations in his ability to use reason and judgment to make work-related decisions. (*Id.* at 689-90.) NP Grove found that Plaintiff was preoccupied with trauma from his wife's death and that he experienced triggers causing him to have flashbacks, which in turn would significantly impair his judgment and increase his anxiety. (*Id.* at 690.)

When it came to concentration, persistence, or maintaining pace, NP Grove found that in addition to moderate or lesser findings, Plaintiff had marked limitations in his ability to complete tasks in a timely manner; in his ability to ignore distractions while working; in his ability to sustain an ordinary routine and regular attendance at work; and in his ability to work a full day without needing more than the allotted number or length of rest periods during the day. (*Id.* at 690-91.) NP Grove also stated that Plaintiff "tends" to have frequently occurring ruminating thoughts and that Plaintiff would experience "excessive decline at times due to irritability and anxiety." (*Id.* at 691.)

When it came to adapting or managing himself, NP Grove found that Plaintiff had marked limitations in his ability to adapt to changes, to manage psychologically-based symptoms, to set realistic goals, and to make plans independently of others. (*Id.*) NP Grove noted that Plaintiff had poor adaptation skills, feared change, and lived with his parents. (*Id.*)

When it came to interacting with others, NP Grove found that in addition to moderate or lesser findings, Plaintiff had marked limitations in his ability to cooperate with others or ask for help, to handle conflicts with others, and to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (*Id.* at 692.) NP Grove found that Plaintiff had paranoid ideations and "ideas which [Plaintiff] has limited insight into." (*Id.*)

NP Grove concluded by noting that Plaintiff could not manage benefits in his own best interest, as Plaintiff's family assisted with Plaintiff's activities of daily living and "would also be beneficial in being a part of" Plaintiff managing his benefits. (*Id.*)

The ALJ found that NP Grove's opinion was "not consistent with the overall evidence." (*Id.* at 58.) The ALJ noted that NP Grove had "opined that [Plaintiff] would have marked limitations in multiple areas in understanding, remembering, or applying information, social functioning, adaption or managing oneself, and concentration, persistence, or pace," that Plaintiff "exhibits poor adaptation abilities," and that he "suffers from paranoia and limited insight that affect his ability to interact with others and function." (*Id.*) However, the ALJ stated that the overall evidence conflicted with NP Grove's opinion for the following reasons:

> [M]edical providers noted that the claimant presented as pleasant and cooperative, and that the claimant reported feeling better with medication[,] . . . . that the claimant reported running on a treadmill at his home, and that he hoped to jog outside once the weather was better. Mental status examinations showed that the claimant exhibited average intelligence, cooperative behavior, . . . fair impulse control, and . . . friendly affect. Indeed, medical professionals noted that the claimant reported that he felt "great" with improved mood, and that the claimant exhibited normal examinations findings during his appointments. . . . [and] improvement in his mood with medication . . . . Moreover, the claimant's reported activities are consistent with an individual that can still function at a high level. Specifically, the claimant engages in multiple and

6

>varied activities such as driving, walking living alone, going grocery shopping, and performing household chores.

(*Id.* (citations omitted).) As a result, the ALJ found NP Grove's opinion unpersuasive.

The ALJ also considered Plaintiff's hearing testimony and other opinion testimony and findings, including the opinion of Dr. John Laurence Miller ("Dr. Miller"), which the ALJ found persuasive as "mostly" consistent with other evidence and Plaintiff's activities, although the ALJ noted that Dr. Miller's belief that Plaintiff's symptoms could significantly interfere with Plaintiff's ability to function was inconsistent with Dr. Miller's own findings (*id.* at 55-56); the opinions of State Agency psychologists Dr. E. Gagan ("Dr. Gagan") and Dr. P. Kennedy-Walsh ("Dr. Kennedy-Walsh"), which the ALJ found persuasive due to their consistency with other evidence and Plaintiff's activities (*id.* at 57-58); Global Assessment of Functioning ("GAF") scores Plaintiff received, which the ALJ found to be unpersuasive and unhelpful (*id.* at 58-59); the opinion of Dr. Allen Meisel ("Dr. Meisel"), which the ALJ found persuasive due to its consistency with Dr. Meisel's physical findings and other medical evidence on file (*id.* at 59-60); the opinion of State Agency physician Dr. G. Feldman ("Dr. Feldman"), which the ALJ found persuasive due to its consistency with other evidence (*id.* at 60); and the opinion of Dr. Thomas O'Brien ("Dr. O'Brien"), Plaintiff's treating physical health provider, which the ALJ found unpersuasive due to its inconsistency with other evidence, noting that Dr. O'Brien did not state that Plaintiff had any physical impairments. (*Id.*)

At step four, the ALJ concluded that Plaintiff was unable to perform his relevant past work based on the VE's testimony suggesting that an individual of Plaintiff's capabilities would be unable to perform such work. (*Id.* at 61.)

At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could perform despite his physical limitations. (*Id.*) This was based on the VE testifying that an individual of Plaintiff's age, education, work experience, and alleged RFC could perform the requirements of representative occupations such as industrial cleaner (116,000 such jobs in the

7

national economy), laundry worker (49,000 such jobs in the national economy), or laundry laborer (25,000 such jobs in the national economy). (*Id.* at 62.)

Accordingly, the ALJ found that Plaintiff was not disabled and therefore was not entitled to benefits under the Act. (*Id.* at 62-63.)

## LEGAL STANDARD

### I.     Standard of Review

Unsuccessful claimants for DIB or SSI under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). A claimant's action must be filed "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citations omitted). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). If there is substantial evidence in the record to support the Commissioner's findings, those findings must be upheld. Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted; second alteration in original). The reviewing court does not have the authority to conduct a

*de novo* review of the ALJ's disability determination and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Upon reviewing decisions of the Commissioner, the court may remand for further proceedings when appropriate. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted)). "Remand may [also] be appropriate . . . [where] inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Additionally, remand is appropriate where further findings or explanations will clarify the rationale underlying the ALJ's decision. *Pratts*, 94 F.3d 34 at 39.

## II.   RFC Assessment

"In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(3)). Regardless, an RFC finding will be upheld when it is supported by "substantial evidence" in the record. *Id.*; *Rapaport v. Comm'r of Soc. Sec.*, No. 16-CV-2617 (VSB)(JCF), 2018 WL 3122056, at *4 (S.D.N.Y. June 26, 2018).

An ALJ's conclusion need not perfectly correspond with any of the medical source opinions cited in his decision, although an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings and must not substitute his own judgment for a competent medical opinion. *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 126 (W.D.N.Y. 2018) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), *Ortiz v. Colvin*, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018), and *Quinto v. Berryhill*,

9

No. 17-CV-24 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). However, the ALJ cannot pick and choose evidence that supports a particular conclusion without explaining his reasoning for doing so. *Andino v. Bowen*, 665 F. Supp. 186, 190 (S.D.N.Y. 1987). Furthermore, "[a]lthough [the Second Circuit does] not require that . . . an ALJ must reconcile explicitly every conflicting shred of medical testimony, . . . [the Second Circuit] cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983).

Regarding any off-task time assessed in determining a claimant's RFC, "if an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation." *Michelle A. v. Saul*, No. 19-CV-991 (MJR), 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020).

### III.  Repeal of Treating Physician Rule

The Social Security Administration repealed its "treating physician rule" on March 27, 2017, prior to Plaintiff's application for benefits. *See, e.g.*, *Tedeschi v. Comm'r of Soc. Sec.*, No. 22-CV-00377(EK), 2024 WL 1014116, at *2 n.3 (E.D.N.Y. Mar. 7, 2024). Under the revised regulations, the Commissioner does not need to assign particular evidentiary weight to treating sources or their opinions. *Id.* at *2 (citing *Vellone v. Saul*, No. 20-CV-0261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R&R adopted sub nom. Vellone ex rel. Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination "is not supported by substantial evidence and is the product of legal error" because the ALJ failed to properly evaluate the opinion of Plaintiff's treating mental health provider NP Grove. (Pl. Mem. at 12.) Specifically, he contends that the ALJ 1) mischaracterized Plaintiff's behavior before medical professionals in finding NP Grove's opinion inconsistent with the overall record; 2) inaccurately addressed portions of the record reflecting that Plaintiff sometimes had violent ideations and conflicts with medical staff and patients; 3) failed to

explain why NP Grove's opinion was inconsistent with Plaintiff's ability to run on a treadmill; 4) ignored other medical findings that supported NP Grove's opinion; 5) improperly relied upon findings made during physical examinations in rejecting NP Grove's opinion; 6) mischaracterized the record by stating that NP Grove's opinion is inconsistent with Plaintiff's daily activities; 7) referenced an incorrect final treatment date in addressing NP Grove's opinion; and 8) did not support his finding that Plaintiff would be off-task five percent of the time.

### I.     Plaintiff's Behavior Before Medical Professionals

Plaintiff argues that patients with bipolar disorder may be prone to "violent mood swings" and that "Plaintiff's behavior in a structured medical environment is not necessarily indicative of his behavior when exposed to the typical stresses of a work environment." (*Id.* at 14.) Plaintiff, therefore, argues that the ALJ's finding that NP Grove's opinion is inconsistent with the overall record because Plaintiff exhibited "pleasant and cooperative" behavior with medical professionals was "illegitimate" and mischaracterized the record because Plaintiff's behavior in front of medical professionals does not accurately depict his day-to-day behavior. (*Id.*) Plaintiff supports this proposition by citing to *Morales v. Apfel*, which states that "[f]or a person . . . who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic" and that the observation that a patient is stable with medication does not support the conclusion he is ready to return to work. 225 F.3d 310, 319 (3d Cir. 2000). Plaintiff also cites *Matta v. Astrue* for the proposition that the stability of a person suffering from bipolar disorder "on *some* days does not necessarily support the conclusion that he is able to work *every day*." 508 F. App'x 53, 57 (2d Cir. 2013) (emphasis in original).

NP Grove examined Plaintiff in a clinical environment, as other practitioners did, yet she found that Plaintiff suffered from significantly more severe symptoms than other practitioners did.

Thus, regardless of how Plaintiff's behavior might differ in a work environment, NP Grove's opinion is inconsistent with findings made by other treating practitioners.

The ALJ's discussion of Plaintiff's pleasant and cooperative behavior before medical professionals, therefore, did not mischaracterize the record and provides support for his findings, including his determination that NP Grove's opinion was not consistent with the overall record.

## II. Plaintiff's Anger Towards Medical Staff

Plaintiff also argues that the ALJ's discussion of Plaintiff's behavior before medical professionals in discounting NP Grove's opinion was "inaccurate" because the record reflects that Plaintiff sometimes had violent ideations towards medical staff and conflicts with staff and patients. (Pl. Mem. at 14-15.)

The portions of the record cited by Plaintiff reflect that he experienced "angry thoughts," "feelings of anger," and "passive violent ideations" towards hospital staff in November 2017. (AR at 386-87, 391.) Plaintiff also notes incidents in which he was yelled at by nurses and challenged by other patients, although there is no indication that Plaintiff responded in kind.[4] (*Id.* at 387.)

In his opinion, the ALJ considered Plaintiff's irritability and other related factors, but found that overall, the record did not show that Plaintiff had significant limitations in associated functional areas. The ALJ acknowledged that Plaintiff's symptoms included "depressed mood, diminished concentration, social withdrawal, . . . and irritability" and that "[m]edical records also indicate that [Plaintiff] presented [as] irritable and underwent hospital treatment for his mental symptoms." (*Id.* at 53.) However, the ALJ concluded that "[a]lthough [Plaintiff] may experience some symptoms and limitations related to his conditions, the objective evidence showed minimal to moderate findings," supporting this point with citations to the record. (*Id.* at 54-55.) The ALJ accounted for

---

[4] Plaintiff additionally told a nurse on November 16, 2017 about a past incident in which he had supposedly said to medical staff: "I want the nurse who bullied my mother, or I'm going to kill every [expletive] one of you." (*Id.* at 387.) It is not clear if this incident took place before or after Plaintiff's alleged onset date.

Plaintiff's irritability by limiting his RFC to only occasional interaction with coworkers and supervisors, no tandem tasks or teamwork, and no public interaction.

The negative emotions cited by Plaintiff also do not undermine the ALJ's characterizations of Plaintiff's behavior. In finding NP Grove's opinion inconsistent with other evidence in the record, the ALJ noted that "the objective medical evidence does not support the claimant's subjective complaints" and that "medical providers noted that [Plaintiff] presented as pleasant and cooperative[] and that [Plaintiff] reported feeling better with medication," among other, similar findings. (*Id.* at 54.) The ALJ did not find that Plaintiff's interactions with medical professionals were always subjectively positive. Instead, as the ALJ explains, Plaintiff's interactions with medical providers support the ALJ's opinion that Plaintiff did not have marked limitations in his social functioning or ability to adapt or manage himself, even if he sometimes felt anger towards others.

As a result, the ALJ's discussion of Plaintiff's behavior before medical professionals was accurate and supports his determination regarding NP Grove's opinion.

### III.     Plaintiff's Ability to Run

Plaintiff argues that the ALJ "failed to explain" why he found NP Grove's opinion was inconsistent with Plaintiff's ability to run on a treadmill at home. (Pl. Mem. at 15-16.)

There are no inadequacies in the ALJ's analysis here. NP Grove found that Plaintiff had marked limitations in his abilities to sustain an ordinary routine, set realistic goals, and make plans independently of others. Plaintiff's ability to run at home and his stated plan of eventually running outside conflict with these findings, as they serve as examples of Plaintiff's ability to sustain a routine, set a goal, and make plans.

As a result, the relevance of Plaintiff's ability to run on a treadmill and his eventual plan to run outside is clear, and these abilities support the ALJ's finding that NP Grove's opinion was inconsistent with the overall record.

### IV.     Evidence Consistent with NP Grove

Plaintiff also argues that NP Grove's opinion was "consistent with other evidence in the record," referring to findings made by Dr. Stevan Obradovic ("Dr. Obradovic") and Dr. Miller, as well as NP Grove's own findings (Pl. Mem. at 16-17, 19-20), and that the ALJ engaged in "picking and choosing evidence." (*Id.* at 16.)

On November 13, 2017, Dr. Obradovic observed that Plaintiff had poor eye contact, a disheveled appearance, depressed psychomotor abilities, hesitant and decreased speech, preoccupied thought content, moderate hopelessness and helplessness, suicidal and homicidal ideation, questionable impulse control, and a depressed mood with a constricted affect; Dr. Obradovic observed Plaintiff's suicide risk level to be moderate, and he diagnosed him with major depression (single episode), OCD, and unresolved grief.[5] (AR at 394-97.)

The ALJ acknowledged and dealt with the symptoms observed by Dr. Obradovic in reaching his findings, which do not clearly support NP Grove's opinion. While not addressing Dr. Obradovic's findings directly, the ALJ recognized that Plaintiff suffered from nearly identical symptoms in evaluating Plaintiff's RFC, including depressed mood, diminished concentration, hopelessness, mania, obsessive thoughts, flight of ideas, suicidal thoughts, and related findings. (*Id.* at 53.) Because the ALJ acknowledged that Plaintiff experienced these symptoms in reaching his opinion, explicitly referencing Dr. Obradovic's opinion would not alter the ALJ's findings.

On November 15, 2019, Dr. Miller found that Plaintiff's demeanor was defensive, his affect was anxious, his mood was dysthymic, and his recent and remote memory were impaired due to anxiety. (*Id.* at 783-84.) Dr. Miller acknowledged that Plaintiff had reported that it took him three to

---

[5] Dr. Obradovic also made many findings that did not suggest impairment, including that Plaintiff was fully oriented to person, place, and date; exhibited guarded but cooperative behavior; had fair long term memory, fair fund of knowledge, and average intelligence; had fair concentration; had a linear and goal-directed thought process; had fair insight and judgment; did not have auditory hallucinations, severe anxiety, a history of suicide attempts, or a history of abuse; and had social support and a sense of responsibility to family. (*Id.* at 394-95.)

four hours to fall asleep and that he would wake up three times a night on average due to nightmares and night terrors; that he had lost appetite; that he was depressed; that he would have crying spells, guilt, hopelessness, irritability, fatigue and loss of energy, diminished self-esteem, and recurring thoughts of suicide; that he had homicidal ideations; that he had excessive apprehension and worry; that he had a phobic response to hospitals; that he had panic attacks (on average twice a month) characterized by palpitations and sweating; that he had recurring hypomanic episodes in which he sometimes threatened harm to people; that he potentially had visual hallucinations; and that he had short-term memory deficits.[6] (*Id.* at 782-83.)

        The ALJ did not selectively overlook Dr. Miller's findings; instead, he dealt with Dr. Miller's findings at length, reaching the conclusion that Dr. Miller's opinion was "mostly consistent with other evidence in the file," but that Dr. Miller's determination that Plaintiff's symptoms could significantly interfere with his daily functioning was not consistent with his own objective findings or other evidence. (*Id.* at 56.) Additionally, Dr. Miller's medical source statement found that Plaintiff had no more than moderate limitations in any of his vocational functional capacities and mild or no limitations in several functional capacities (*id.* at 783-84); this is inconsistent with NP Grove's finding that Plaintiff had marked limitations in several vocational capacities. (*Id.* at 690-92.) It was therefore reasonable for the ALJ to find that Dr. Miller's findings were "mostly consistent" with other evidence while NP Grove's findings were not.

        Plaintiff also states that on July 11, 2018, NP Grove observed that Plaintiff's speech was pressured and rambling at times, that his mood was anxious and irritable, and that his judgment was mildly impaired; on January 15, 2019, NP Grove observed that Plaintiff's speech was pressured, he

---

[6] Dr. Miller also made findings that did not suggest impairment, including noting that Plaintiff had fair social skills, appropriate dress, normal motor behavior, appropriate eye contact, fluid and clear speech, coherent and goal directed thought processes, intact orientation to person, place, and time, average intellectual functioning, and fair insight and judgment. (*Id.*)

was hard to direct, he ruminated on the death of his wife, his anxiety increased between visits, his mood was irritable and hypomanic, and his insight and judgment were poor; and on July 11, 2019, NP Grove observed that Plaintiff's mood was anxious, angry, and irritable, his affect was angry and restless, his concentration was abnormal, and his judgment and insight were poor; he notes that she also diagnosed him with generalized anxiety disorder, manic bipolar disorder, and obsessive compulsive disorder. (*Id.* at 694-98, 703, 710.)

The ALJ addressed these findings directly, but concluded that they were not consistent with the overall evidence, and rejected NP Grove's opinion as unpersuasive. The ALJ did not conclude that NP Grove's opinion was inconsistent with *all* other evidence in the record. Instead, the ALJ considered the findings cited by Plaintiff and acknowledged that Plaintiff suffers from a variety of serious symptoms, but after reviewing the record, nonetheless concluded that NP Grove's opinion was "not consistent with the overall evidence." (AR at 58.) The Court can identify no error in the ALJ's reasoning.

### V.     Findings Made During Physical Examinations

Plaintiff argues that the ALJ erred by weighing "unremarkable" findings that were not made by mental health professionals, but were instead taken from physical examinations such as urology reports and examinations of fevers, in rejecting NP Grove's opinion. (Pl. Mem. at 17.)

The ALJ adequately explained the relevance of these physical examinations to his analysis, and the Court is aware of no point of law suggesting that the ALJ may not refer to physical examinations in reaching conclusions regarding Plaintiff's mental state.

As a result, these findings support the ALJ's rejection of NP Grove's opinion.

### VI.    Plaintiff's Daily Activities

Plaintiff next argues that the ALJ mischaracterizes the record by asserting that NP Grove's opinion is inconsistent with Plaintiff's daily activities such as living alone, grocery shopping, and

16

performing household chores. (Pl. Mem. at 17.) Plaintiff contends that the ALJ only references evidence that is unfavorable to him and notes that he has testified he does not believe he would be able to survive without his parents' support. (*Id.*; *see also* AR at 26.) In support of this point, Plaintiff argues that the ALJ neglected to recognize that he receives assistance from his parents in performing activities. (Pl. Reply at 3.)

The ALJ stated that "[Plaintiff's] reported activities are consistent with an individual that can still function at a high level," noting that Plaintiff was able to engage in "multiple and varied activities such as driving, walking, living alone, going grocery shopping, and performing household chores." (AR at 58.) At his hearing before the ALJ, Plaintiff acknowledged that he could do these things, but also testified that it was difficult for him to keep a schedule, to be organized, or to stay on top of things; that he lived next door to his parents, that his parents cleaned his clothes, that they fed him and he visited them for meals, and that they often gave him groceries; that "a lot of times" his father would make his medical appointments; and that he never went anywhere without his father during the day. (*Id.* at 24-29.)

In evaluating Plaintiff's abilities, the ALJ stated only that Plaintiff could perform a wide array of activities despite his limitations, not that he performed them alone. While the record reflects that Plaintiff testified that his parents frequently performed specific chores, such as cooking, for him, and that when Plaintiff performed tasks, one or both of his parents would accompany him, it does not reflect that Plaintiff was unable to perform those chores or other daily activities. As the ALJ found, Plaintiff's ability to perform these activities suggests that he can still work certain unskilled jobs. *See, e.g.*, *Raymond G. v. Comm'r of Soc. Sec.*, No. 21-CV-01172, 2023 WL 5400423, at *4 (W.D.N.Y. Aug. 22, 2023) (the court finding that while plaintiff had deficits in mood and affect, the ALJ nonetheless "reasonably considered that plaintiff's . . . ability to perform varied daily activities . . . supported a

finding that plaintiff could work at unskilled jobs with occasional work setting changes on a regular and continuing basis").

The ALJ's assertion regarding Plaintiff's daily activities, therefore, did not mischaracterize the record and supports his view that NP Grove's opinion is not consistent with the overall record.

### VII.    Incorrect Treatment Date

Plaintiff notes that NP Grove treated Plaintiff in July 2019, but that the ALJ incorrectly stated that NP Grove last treated Plaintiff in May 2019. (Pl. Mem. at 17-18.)

Plaintiff does not argue that the ALJ's reference to the wrong date affected the ALJ's opinion, instead stating only that the date serves as "yet another example of the ALJ's mischaracterization of the record." (*Id.* at 18.) Furthermore, NP Grove circulated the opinion at issue in June 2019, before she reached her July 2019 findings.

The ALJ's error in stating that NP Grove last treated Plaintiff in May 2019 is, therefore, harmless.

### VIII.   Five Percent Off-Task Finding

Plaintiff argues that the ALJ erred by not explaining how he calculated a "five percent off-task" time. (Pl. Mem. at 21-22.)

The ALJ found that Plaintiff would have to be off-task five percent of the time during an eight-hour workday. (AR at 52.) Mental status examinations, on balance, showed that Plaintiff possessed normal levels of attention and concentration, and the ALJ explained that the record reflects, at most, moderate limitations when it came to Plaintiff's mental symptoms and conditions. (*See, e.g., id.* at 55 ("Although [Plaintiff] may experience some symptoms and limitations related to his conditions, the objective record showed minimal to moderate findings").)

Nonetheless, remand is appropriate on this issue. The ALJ cites no evidence in the record, medical or otherwise, suggesting that Plaintiff would need to be off-task for this specific length of

time. *Michelle A.*, 2020 WL 7223235 at *4 (while plaintiff's RFC assessment was otherwise "highly detailed" and "well-reasoned," remand was appropriate where the ALJ cited no evidence supporting his five-percent off-task finding); *Wouters v. Comm'r of Soc. Sec.*, No. 19-CV-610 (FPG), 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020) (holding the same); *Salisbury v. Saul*, No. 19-CV-706 (JLC), 2020 WL 913420, at *32 (S.D.N.Y. Feb. 26, 2020) (remanding, *inter alia*, because the ALJ failed to discuss her finding that plaintiff could be on task at all times). Here, there are no medical opinions, treatment records or other evidence in the record that state a specific amount of time Plaintiff would need to be off-task for during a workday. *Michelle A.*, 2020 WL 7223235 at *4. Where the ALJ fails to tether an off-task finding to such evidence, the ALJ's RFC finding is not based on substantial evidence. *See, e.g., id.*; *Austin v. Comm'r of Soc. Sec.*, No. 19-CV-638 (JLS), 2020 WL 5629030, at *7 (W.D.N.Y. Sept. 21, 2020).

Furthermore, the ALJ's error is not harmless, as the VE explained that a twenty percent off-task time would preclude Plaintiff's employment and did not testify regarding whether an off-task time between five and twenty percent would preclude Plaintiff's employment. *Id.*; (AR at 39-40.)

Accordingly, the Court finds the ALJ's RFC determination is not supported by substantial evidence, and remand is necessary. On remand, the Commissioner should further develop the record to specifically address how long Plaintiff can remain on task over the course of a workday. *Michelle A.*, 2020 WL 7223235, at *5.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, Defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
February 10, 2024